PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GOLDEN RULE FASTENERS, INC., | ) | |
| | ) | CASE NO. 1:19CV341 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| OATEY CO., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 16] |

Defendant/Counter-Claimant Oatey Co. moves the Court to stay proceedings pending the United States Patent and Trademark Office's ("USPTO") *ex parte* reexamination of patent claims related to those brought in this action.  ECF No. 16.  Plaintiff/Counter-Defendant Golden Rule Fasteners filed a response in opposition (ECF No. 18), and Oatey replied (ECF No. 20).  For the reasons stated in this Order, Oatey's motion is granted.

**I. Background**

In its initial Complaint, filed February 14, 2019, Golden Rule asserted claims based on three related patents: United States Patent Nos. 8,141,303 (the "'303 Patent"); 8,534,002 (the '002 Patent"); and 8,464,475 (the "'475 Patent").  ECF No. 1 at PageID#: 1.  The '475 Patent application was a continuation of the '002 Patent application, which was, in turn, a continuation of the '303 Patent application.  *Id.* at PageID#: 2.

The three related patents describe a "pipe flashing apparatus and method," more specifically, a weather-proof collar that can be placed around rooftop pipes of varying diameters.

(1:19CV341)

ECF No. 1-1 at PageID#: 19; ECF No. 1-2 at PageID#: 28; ECF No. 1-3 at PageID#: 37.  All

patents describe that collar as having a "conical shape," the "top edge" of which is "coupled to a

bottom edge," and a rectangular "foot" coupled to the bottom edge of the collar, to be installed

on the rooftop.  ECF No. 1-1 at PageID#: 19; ECF No. 1-2 at PageID#: 28, 33 ("[T]he thickness

and flexibility of the foot is such that it acts as a shingle."); ECF No. 1-3 at PageID#: 37.  The

patents also describe a "longitudinal opening" running the length of the device that can separate

and reunite, "thereby allowing the flashing to be spread apart and placed about a pipe."  ECF No.

1-1 at PageID#: 19; *see* ECF No. 1-2 at PageID#: 28; ECF No. 1-3 at PageID#: 37.  The interior

of the described collar is lined with "elastomeric material" to seal out moisture.  ECF No. 1-1 at

PageID#: 24; ECF No. 1-2 at PageID#: 33; ECF No. 1-3 at PageID#: 42.

On March 6, 2019, the USPTO granted third-party Aztec Washer Company's request for

*ex parte* reexamination of certain of Golden Rule's patent claims.  ECF Nos. 16-4; 16-5; 16-6.

Specifically, the USPTO will reexamine the patentability of Claim 1 of the '303 Patent, Claims

1-8, 10, and 12-15 of the '002 Patent, and Claims 1-4 and 8-9 of the '475 Patent.  ECF No. 16-5

at PageID#: 182; ECF No. 16-6 at PageID#: 195; ECF No. 16-4 at PageID#: 168.

Subsequently, on March 27, 2019, Golden Rule filed an Amended Complaint in this

litigation.  ECF No. 13.  In the Amended Complaint, Golden Rule dropped all allegations based

on the '303 and '002 Patents and retained only the allegations based on Claims 5 and 6 of the

'475 Patent.  *Id.*  It stated, however, that "[w]hen [the USPTO] examination is complete, Golden

Rule will likely assert additional claims" from the '303, '202, and '475 Patents "in this case."  *Id.*

at PageID#: 102-03 n.1.

(1:19CV341)

On May 3, 2019, prior to answering the Amended Complaint,[1] Oatey moved to stay proceedings pending the conclusion of the USPTO reexamination of the related patent claims. ECF No. 16.  Golden Rule resists the motion to stay, arguing that the specific claims at issue (Claims 5 and 6 of the '475 Patent) are not themselves under reexamination, and there is therefore no reason to delay litigation.  ECF No. 18.[2]  Oatey observes that the district court for the Northern District of Mississippi recently stayed proceedings in a related case, concluding that the pending USPTO reexamination[3] would clarify the issues and simplify the litigation.  *See Golden Rule Fasteners, Inc. v. Neverleak Co., L.P.*, Case No. 3:17-cv-249-MPM-JMV, 2019 WL 384003 (N.D. Miss. Jan. 30, 2019).

## II.  Analysis

"Courts have inherent power to manage their dockets and stay proceedings."  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  And the House of Representatives Judiciary Committee expressly contemplated stays of court proceedings while USPTO reexaminations were underway.  H.R. Rep. No. 96-1307(I), at 4 (1980) ("[S]tay provisions are unnecessary in that such power already resides with the court to prevent costly pretrial maneuvering which attempts to circumvent the

---

[1] Oatey was granted an extension of time until May 15, 2019, to file its Answer. *Order*, April 15, 2019.

[2] Oatey filed a reply brief in support of its motion to stay.  ECF No. 20.

[3] At the time the stay order was issued, the reexamination request had not yet been filed with the USPTO.  But the court was aware that third party Aztec Washer Company planned to file such a request within days.  *Neverleak*, 2019 WL 384003, at *1.

(1:19CV341)

reexamination procedure."). "There is a liberal policy in favor of granting motions to stay

proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII*

*Corp. v. STD Entm't*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994).  Whether to grant a motion for

stay resides in the Court's informed discretion.  *Id.* at 1380.

     The parties agree that the Court should consider three factors in determining whether to

stay proceedings: "(1) whether a stay would unduly prejudice or present a clear tactical

disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and

trial of the case; and (3) whether discovery is complete and whether a trial date has been set."

*Progressive Cas. Ins. Co. v. Allstate Ins. Co.*, 2011 WL 3322767, at *2 (N.D. Ohio Aug. 2, 2011)

(quoting *01 Communique Lab., Inc. v. Citrix Sys.*, 2008 WL 696888 (N.D. Ohio Mar. 12, 2008)

(citation omitted).  The Court also considers "whether the party seeking the stay has done so in

good faith or for the purposes of delay."  *Id.*

     Golden Rule does not contend that the first and third factors weigh against a stay.  ECF

No. 18 at PageID#: 274 ("[T]hese factors are neutral, or at the very most marginally weigh in

favor of a stay.").  Golden Rule will suffer no prejudice if in the event of a stay, and the court

proceedings here are in their infancy.  Additionally, Golden Rule does not suggest that Oatey has

requested the stay in bad faith or for purpose of delay.  Only the second factor, whether a stay

will simplify the issues in question and trial of the case, merits discussion.

     Strictly, the two patent claims that remain at issue in this case (Claims 5 and 6 of the '475

Patent) are not under USPTO reexamination, and nothing more than idle speculation suggests

they might be reexamined soon.  Nevertheless, the USPTO reexamination of 20 closely-related

(1:19CV341)

claims has a discernible effect on the proceedings in this Court, both in terms of the eventual

outcome of the parties' dispute and the efficiency with which the litigation is carried out.

The second factor weighs strongly in favor of a stay. Golden Rule has already indicated

its intention to persist in related litigation "in this case" after the USPTO reexamination

concludes. ECF No. 13 at PageID#: 101-02 n.1. A stay will simplify the litigation because it

will avoid duplicative discovery, motion practice, hearings and conferences, and related work.

There is an obvious litigative economy that attends consolidation of related matters, even when

matters are only loosely related. *Cf., e.g.*, Fed. R. Civ. P. 42(a).

The claims at issue in this action (Claims 5 and 6 of the '475 Patent) are closely linked

with the claims currently undergoing reexamination. Claim 5 of the '475 Patent explicitly

incorporates the terms and limitations of Claim 1, which is under reexamination and subject to

cancellation or alteration by the USPTO. ECF No. 1-2 at PageID#: 35 (Claim 5: "The roof

flashing of claim 1 wherein at least one of the collar, the base, and the foot includes a

reinforcement material.") And Claim 6 of the '475 Patent explicitly incorporates the terms and

limitations of Claim 5, itself dependent on Claim 1 (under reexamination). *Id.* (Claim 6: "The

roof flashing of claim 5 wherein the reinforcement material is embedded in the [*sic*] at least one

of the collar, the base, and the foot."). Additionally, Claims 5 and 6 both describe a

"reinforcement material" to be used in the foot, base, or collar. *Id.* That term is also used in

Claims 3 and 4, both under reexamination by the USPTO, subject to cancellation or alteration.

*Id.* A claim term found in different claims must be interpreted consistently from one claim to the

next. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995). The

5

(1:19CV341)

USPTO's conclusions about the meaning of the term "reinforcement material" in Claims 3 and 4 will necessarily affect the Court's understanding of the same term in Claims 5 and 6.

Even if the related claims emerge from reexamination unscathed, the USPTO's expert impressions about the patents and the innovations will be valuable to the court in its own consideration of the related matters.  *See Ethicon*, 849 F.2d at 1426 ("[A]n advantage of the reexamination process is that it allows the validity of a patent to be 'tested in the Patent office where the most expert opinions exist and at a much reduced cost.'" (quoting H.R. Rep. No. 96-1307(I), at 4 (1980))).

All factors weigh in favor of a stay pending the USPTO's *ex parte* reexamination of related claims.

### III.  Conclusion

For the reasons stated in this Order, Oatey's motion to stay proceedings pending the USPTO *ex parte* reexamination of certain patent claims (ECF No. 16) is granted.  The case shall be administratively closed for the duration of the reexamination period, subject to reopening on the parties' written motion.  The case management conference scheduled for July 22, 2019, is cancelled.


        IT IS SO ORDERED.


    May 31, 2019                         /s/ Benita Y. Pearson
Date                                 Benita Y. Pearson
                                     United States District Judge

6